

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

08 SEP -2 PM 3: 15

CLERK - LAS CRUCES

In re: JEFFERY W. POTTER,

       Debtor,

LOS ALAMOS NATIONAL BANK,

       Plaintiff/Appellee,

v.                             Civ. No. 07-0414 BB/LAM
                                 Bankruptcy No. 05-14071-m7
                                 Adversary No. 05-1149 M

MARTIN S. FRIEDLANDER,

       Defendant/Appellant.

## MAGISTRATE JUDGE'S ANALYSIS
## AND RECOMMENDED DISPOSITION ON BANKRUPTCY APPEAL[1]

### Introduction

**THIS MATTER** is before the Court on an appeal by Appellant Martin S. Friedlander

(hereinafter, "Appellant" or "Mr. Friedlander") from the United States Bankruptcy Court.[2]  As

---

[1]**Within ten (10) days after a party is served with a copy of this proposed analysis and recommended disposition, that party may, pursuant to 28 U.S.C. § 636(b)(3) and Fed. R. Civ. P. 72(b)(2), file written objections to such proposed analysis and recommended disposition.  A party must file any objections with the Clerk of the United States District Court within the ten-day period allowed if that party wants to have appellate review of the proposed analysis and recommended disposition.  If no objections are filed, no appellate review will be allowed.  Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within ten (10) days after being served with a copy of the objections.**

[2]Mr Friedlander elected to have this appeal heard by the district court instead of a bankruptcy appellate panel by filing an election pursuant to 28 U.S.C. § 158(c)(1) and Fed. R. Bank. P. 8001(e).  *See Clerk's Certificate of Service of Notice of Appeal (Doc. 1)* at pages numbered 27-28 in the Court's CM-ECF electronic docketing system.  Unless otherwise noted, all references to document numbers in this proposed analysis and recommended disposition are to document numbers in the District Court's docket for Civ. No. 07-0414 BB/LAM.  References to documents filed in Adversary Proceeding No. 05-1149 M that are contained in the original record on appeal in this proceeding (hereinafter, "*Record*" or "*R.*") are cited to the *Record* with their document numbers from the bankruptcy court's docket as follows: "*R., Vol. No., Adv. Proc. Doc. No.*"  References to documents filed in Bankruptcy Case No. 05-14071-m7 that are

discussed more fully below, this is an appeal from various orders entered by the Hon. Mark B. McFeeley, Bankruptcy Judge, in Adversary Proceeding No. 05-1149 M (hereinafter, the "Adversary Proceeding"). The district court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1).[3] The parties have submitted appellate briefs to the Court (*Docs. 24, 26 and 27*). Although Mr. Friedlander has requested oral argument, the Court finds that oral argument is unnecessary to resolve this appeal.[4] After considering the parties' briefs, the six-volume *Record*, certain documents of which the Court takes judicial notice as described herein, and relevant law, the Court concludes that Mr. Friedlander's appeal is not well-taken. Therefore, the Court recommends, for the reasons set forth below, that the bankruptcy court's decisions be **AFFIRMED**.

## Background

This appeal arises out of the Adversary Proceeding in which the bankruptcy court determined the rights of Mr. Friedlander and Appellee Los Alamos National Bank (hereinafter, "Appellee" or "LANB") to certain funds held in escrow by Rio Grande Title Company (hereinafter, "RGTC"). The funds were held in escrow for Jeffrey W. Potter (hereinafter, "Debtor" or "Mr. Potter") pursuant to an escrow agreement dated November 30, 2003 (hereinafter, the "Escrow Agreement"), by and among LANB, French & French Fine Properties, Inc. (hereinafter, "French & French"), Mr. Potter, the Legal Defense and Maintenance Trust of California Dated 8/25/03 (hereinafter, the "Trust") by

---

contained in the *Record* are cited to the *Record* with their document numbers from the bankruptcy court's docket as follows: "*R., Vol. No., Bankr. Case Doc. No.*" References to documents filed in Adversary Proceeding No. 05-1149 M or Bankruptcy Case No. 05-14071-m7 that are contained in the supplemental record on appeal in this proceeding (hereinafter, "*Supplemental Record*" or "*S.R.*") are cited to the *Supplemental Record* with their document numbers from the bankruptcy court's dockets, if any, as follows: "*S.R., Adv. Proc. Doc. No.*" or "*S.R., Bankr. Case Doc. No.*"

[3]This statute gives the federal district courts jurisdiction to hear appeals from "final judgments, orders and decrees." 28 U.S.C. § 158(a)(1).

[4] *See* Fed. R. Bankr. P. 8012.

its trustee Mariana Danilovic, Summit Investment Company, LLC (hereinafter, "Summit Investment"), Kitty Miller and RGTC.[5]  The escrowed funds, in the approximate original amount of $76,336.05,[6] were part of the proceeds from the sale of real property located at 432 Galisteo Street in Santa Fe, New Mexico (hereinafter, the "Galisteo Property").[7]  A review of the factual and procedural background of the Adversary Proceeding is helpful to understanding the issues on appeal.  The facts were ascertained by reference to the parties' briefs and the Record.

On May 19, 2005, Mr. Potter filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.[8]  In Schedule B of his bankruptcy petition, Mr. Potter listed the escrowed funds as property of his bankruptcy estate.[9]

On July 5, 2005, LANB filed the Adversary Proceeding against Mr. Potter, Mr. Friedlander and others to determine the validity, priority and extent of liens on the escrowed funds and for a

---

[5]See *Los Alamos National Bank's Response in Opposition to Martin S. Friedlander's Motion for Judgment on the Pleadings and/or for Summary Judgment Against LANB and Cross-Motion for Summary Judgment* (*R., Vol. 3, Adv. Proc. Doc. 70*), Exhibit 7 (Escrow Agreement) (*S.R., Adv. Proc. Doc. 70-7*).  Although this copy of the Escrow Agreement shows only the signatures of Ms. Danilovic, as trustee of the Trust, and Mr. Friedlander, as attorney for Ms. Danilovic, Mr. Potter and Summit Investment, the parties to this appeal do not dispute the authenticity of this copy of the Escrow Agreement.  Nor do they contend that the other parties to the Escrow Agreement failed to sign it.

[6]*Id.* at 2.

[7]*Id.* at 1.

[8]See *Voluntary Petition* (*R., Vol. 6, Bankr. Case Doc. 1*).  Mr. Potter's bankruptcy was later converted to a Chapter 7 case. See *Order Granting Motion to Convert Case to Chapter 7* (*Doc. 228*), filed on November 17, 2006, in the United States Bankruptcy Court for the District of New Mexico in Case No. 05-14071-m7.  The Court takes judicial notice of the latter document pursuant to Fed. R. Evid. 201.

[9]See *Summary of Schedules, Schedules A-J and Statement of Financial Affairs* (*R., Vol. 6, Bankr. Case Doc. 18*) at 3.

declaratory judgment.[10]  In its complaint, LANB alleged that it had an interest in, and lien on, the escrowed funds that was "superior to any interest or lien of Friedlander, *except* to the extent that [the bankruptcy] court determines that Friedlander holds a valid common law attorney's charging lien on the Funds, in an amount in excess of the Funds."[11]  In its complaint, LANB asked the bankruptcy court for a judgment determining, *inter alia*, "whether Friedlander holds a valid attorney's lien under New Mexico law, and if so, the extent of his lien[,]" "[d]eclaring that LANB has a perfected lien on the Funds subject only to an attorney's lien by Friedlander, which is found to be valid under New Mexico law[,]" and "[o]rdering [RGTC] to disburse the Funds to LANB and/or Friedlander as their interests are determined."[12]

On August 19, 2005, Mr. Friedlander filed a motion to dismiss the Adversary Proceeding for lack of personal jurisdiction over him and improper venue or, in the alternative, to transfer the Adversary Proceeding to the United States Bankruptcy Court for the Central District of California where, he alleged, he resided and practiced law.[13]  In his motion to dismiss and his reply in support of the motion, Mr. Friedlander asserted that he had an attorney's lien against the escrowed funds that was superior to LANB's lien.[14]

_____

[10] *See* **Complaint to Determine Validity, Priority or Extent of Liens and for Declaratory Judgment** (*R.*, Vol. 5, Adv. Proc. Doc. 1).

[11] *Id.* at ¶ 46.

[12] *Id.* at 8-9.

[13] *See* **Martin S[.] Friedlander, Esq.'s Motion to Dismiss Under FRCP Rule 12 B (2), and (3), for Lack of Jurisdiction Over the Person, and for Improper Venue, and [A]lso Under 28 USC Sections 1409, 1410, and 1412 and/or to Transfer to the United States Bankruptcy Court for the Central District of California [W]here Martin S[.] Friedlander, Esq. [R]esides and [P]ractices [L]aw, and [W]here the [A]ction [C]ould [H]ave [C]ommenced** (*R.*, Vol. 5, Adv. Proc Doc. 6).

[14] *Id.* at 3-5; **Reply to LANB's Objections to Martin S[.] Friedlander, Esq.'s Motion to Dismiss Under FRCP Rule 12 B (2), and (3)[] for Lack of Jurisdiction Over the Person, and for Improper Venue, and [A]lso Under 28 U.S.C. Sections 1409, 1410, and 1412 and/or to Transfer to the United States Bankruptcy Court for the Central**

4

On January 18, 2006, the bankruptcy court entered an order denying Mr. Friedlander's motion to dismiss and/or transfer the Adversary Proceeding.[15]  In this order, the bankruptcy court determined, *sua sponte*, that it would abstain from adjudicating the Adversary Proceeding based on its findings that the Adversary Proceeding was just beginning; it involved the same parties and claims under state law as a pending state court action in New Mexico; and it would only affect the administration of the bankruptcy estate if there were any funds available after the state court adjudicated the rights of LANB, the Trust and Mr. Friedlander to the escrowed funds in the state court action.[16]  The bankruptcy court stayed the Adversary Proceeding until a decision was rendered in the state court action.[17]

On January 23, 2006, LANB filed a motion asking the bankruptcy court to reconsider abstention and Mr. Friedlander filed a response to this motion on February 8, 2006.[18]   On February 9, 2006, the bankruptcy court entered an order granting LANB's motion to reconsider and setting aside its decision to abstain from hearing the Adversary Proceeding.[19]  The bankruptcy court based its decision not to abstain on its findings that the state court action did "not seek resolution of the precise issue presented in [the] adversary proceeding, i.e., the rights of LANB, Friedlander and

---

District of California [W]here Martin S[.] Friedlander, Esq. [R]esides and [P]ractices [L]aw, and [W]here the [A]ction [C]ould [H]ave [C]ommenced (R., Vol. 5, Adv. Proc. Doc. 14) at 4-5, 8-9.

[15] See **Order Denying Motion to Dismiss and/or to Transfer Venue and Abstaining from Adjudication of Adversary Proceeding** (R., Vol. 5, Adv. Proc. Doc. 22).

[16] Id. at 7-8.

[17] Id. at 8.

[18] See **Los Alamos National Bank's Motion for Reconsideration of Order Abstaining From Adjudicating This Adversary** (R., Vol. 5, Adv. Proc. Doc. 23); **Martin S[.] Friedlander's Position on LANB's Motion for Reconsideration** (R., Vol. 5, Adv. Proc. Doc. 27).

[19] See **Order Granting Plaintiff's Motion for Reconsideration** (R., Vol. 5, Adv. Proc. Doc. 28) at 1-2.

the other defendants to an escrow account at Rio Grande Title Company of Santa Fe containing proceeds of a pre-petition sale in the amount of $76,428.45[,]" and that several of the named defendants in the Adversary Proceeding who might assert a claim to the escrowed funds were not parties to the state court action.[20]

On February 3, 2006, Mr. Friedlander filed a motion to recuse the bankruptcy judge, which the bankruptcy judge denied in an order filed on February 13, 2006.[21]

On February 9, 2006, Mr. Friedlander filed a motion for reconsideration asking the bankruptcy court to vacate the order setting aside its decision to abstain from hearing the Adversary Proceeding, asking the bankruptcy judge to disqualify himself from hearing the Adversary Proceeding based on an alleged conflict of interest, and asking the bankruptcy court to reconsider its order denying Mr. Friedlander's motion to dismiss and/or transfer the Adversary Proceeding.[22] The bankruptcy judge denied this motion in an order filed on February 14, 2006.[23]

On May 5, 2006, Mr. Friedlander filed a motion for judgment on the pleadings and/or motion for summary judgment in the Adversary Proceeding.[24] In this motion, Mr. Friedlander asserted that he had an enforceable attorney's lien, superior to the lien of LANB, on all of the funds held in

---

[20] *Id.* at 2.

[21] *See Martin S. Friedlander's Request for Recusal of Judge* (*R., Vol. 5, Adv. Proc. Doc. 26*); *Order Denying Martin S. Friedlander's Request for Recusal of Judge* (*R., Vol. 4, Adv. Proc. Doc. 31*).

[22] *See Martin S[.] Friedlander's Motion for Reconsideration* (*R., Vol. 5, Adv. Proc. Doc. 29*) at 3.

[23] *See Order Denying Martin Friedlander's Motion for Reconsideration* (*R., Vol. 4, Adv. Proc. Doc. 32*).

[24] *See Friedlander's Motion for Judgment on the Pleadings Pursuant to FRCP Rule 12 (C) Against Plaintiff LANB, and/or Motion for Summary Judgment   Against Plaintiff Pursuant to FRCP Rule 56* (*R., Vol. 4, Adv. Proc. Doc. 53*).

escrow by RGTC and that he was entitled to be paid all of those funds.[25] Mr. Friedlander asked the bankruptcy court to order LANB to sign the necessary escrow instructions to release all of the escrowed funds to him.[26]  On May 25, 2006, LANB filed a response to Mr. Friedlander's motion which included a cross-motion for summary judgment.[27] In its cross-motion for summary judgment, LANB asserted that Friedlander did not have a lien on the funds held in escrow by RGTC and that LANB had a valid, perfected, priority security interest in those funds.[28]

On July 19, 2006, the bankruptcy court entered an order ruling on LANB's motion for a determination of whether the Adversary Proceeding was a core or non-core proceeding.[29]  In that order, the bankruptcy court found that Mr. Potter had a beneficial interest in the Galisteo Property when it was sold and, therefore, he had a beneficial interest in the funds held in escrow by RGTC representing proceeds of the Galisteo Property.[30]  The bankruptcy court found that Mr. Potter's beneficial interest in the escrowed funds was property of his bankruptcy estate and, therefore, the Adversary Proceeding, which involved claims to the escrowed funds, was within the bankruptcy court's core jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(A).[31]  Additionally, the bankruptcy court concluded that it had core jurisdiction over the Adversary Proceeding pursuant to

---

[25] *Id.* at 2.

[26] *Id.*

[27] See *Los Alamos National Bank's Response in Opposition to Martin S. Friedlander's Motion for Judgment on the Pleadings and/or for Summary Judgment Against LANB and Cross-Motion for Summary Judgment* (R., Vol. 3, Adv. Proc. Doc. 70).

[28] *Id.* at 12, 14-16.

[29] See *Order on Motion for Determination of Whether Proceeding is Core or Non-Core* (R., Vol. 3, Adv. Proc. Doc. 78).

[30] *Id.* at 4.

[31] *Id.* at 4-5.

28 U.S.C. § 157(b)(2)(K), because the Adversary Proceeding sought to determine the validity,

priority and extent of competing liens asserted with respect to the escrowed funds, and that it had

core jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(O), because the Adversary Proceeding involved

the adjustment of Mr. Potter's liability for the claims of LANB and Mr. Friedlander.[32]

On August 9, 2006, the bankruptcy court entered a memorandum opinion in which it found,

*inter alia*, that Mr. Friedlander did not have a lien on the funds held in escrow by RGTC and that

LANB had a priority lien on the escrowed funds.[33] In its memorandum opinion, the bankruptcy court

determined that LANB's cross-motion for summary judgment should be granted and that

Mr. Friedlander's motion for judgment on the pleadings and/or for summary judgment should be

treated as a motion for summary judgment and denied.[34]  On the same date, the bankruptcy court

entered an order granting summary judgment in favor of LANB, ordering RGTC to immediately

disburse the escrowed funds in accordance with the Escrow Agreement, and denying Mr. Friedlander

summary judgment.[35]  On August 21, 2006, Mr. Friedlander filed a motion to reconsider the order

granting LANB summary judgment, ordering RGTC to disburse the escrowed funds and denying

---

[32] *Id.* at 5.

[33] *See* **Memorandum Opinion** (*R., Vol. 3, Adv. Proc. Doc. 83*) at 8.  This memorandum opinion constituted Judge McFeeley's findings of fact and conclusions of law on the motions for summary judgment pursuant to Fed. R. Bankr. P. 7052 (making Fed. R. Civ. P. 52 applicable in adversary proceedings).  *Id.*

[34] *Id.* at 1-2, 8.

[35] *See* **Order Granting LANB Summary Judgment and Denying Martin S. Friedlander Summary Judgment** (*R., Vol. 3, Adv. Proc. Doc. 84*).

Mr. Friedlander summary judgment.[36] The bankruptcy court denied this motion for reconsideration in an order filed on April 13, 2007.[37]

This appeal followed when Mr. Friedlander filed a notice of appeal in the bankruptcy court on April 20, 2007, which was filed in this Court on April 26, 2007.[38] According to Mr. Friedlander, LANB has collected the escrowed funds from RGTC and Mr. Friedlander asks the Court to order LANB to pay him the funds, with interest.[39]

<u>**Issues on Appeal**</u>

In his notice of appeal, Mr. Friedlander states that he is appealing from the bankruptcy court's memorandum opinion and order filed in the Adversary Proceeding on August 9, 2006, in which the bankruptcy court granted LANB's cross-motion for summary judgment and denied Mr. Friedlander's motion for summary judgment; the bankruptcy court's related order filed in the Adversary Proceeding on August 9, 2006, in which it granted summary judgment in favor of LANB, ordered RGTC to immediately disburse the escrowed funds in accordance with the Escrow Agreement, and denied summary judgment in favor of Mr. Friedlander; and the bankruptcy court's order filed in the Adversary Proceeding on April 13, 2007, in which it denied Mr. Friedlander's motion for

---

[36] *See Defendant Martin S[.] Friedlander's Motion for Reconsideration From Court's Order of August 9, 2006 Granting LANB's Motion for Summary Judgment and Denying Friedlander's Motion for Judgment on the Pleadings and/or Motion for Summary Judgment* (R., Vol. 3, Adv. Proc. Doc. 85).

[37] *See Order Denying Motion to Reconsider* (R., Vol. 2, Adv. Proc. Doc. 102).

[38] *See Clerk's Certificate of Service of Notice of Appeal* (Doc. 1) at pages numbered 1, 3 and 4 in the Court's CM-ECF electronic docketing system.

[39] *See "Appellant's "Amended" Opening Brief"* (Doc. 24) at pages numbered 19 and 20 in the Court's CM-ECF electronic docketing system; *see also Appellant's Supplemental Brief Pursuant to This Court's Order of 03/04/2008 in Support of His Contention That the Judgment Issued by the Trial Court in Its Motion for Summary Judgment Was a Final Judgment Pursuant to 28 U.S.C. § 158(a)* (Doc. 29) at page numbered 7 in the Court's CM-ECF electronic docketing system.

reconsideration of the bankruptcy court's order granting LANB summary judgment, ordering disbursement of the escrowed funds, and denying Mr. Friedlander summary judgment.[40]

In the statement of issues on appeal filed by Mr. Friedlander in the Adversary Proceeding, and the statement of issues on appeal in Mr. Friedlander's amended opening brief filed in this proceeding,[41] Mr. Friedlander identified the following issues on appeal: (1) whether the bankruptcy court[42] erred in its order filed in the Adversary Proceeding on January 18, 2006, denying his motion to dismiss and/or transfer venue; (2) whether the bankruptcy court erred in its order filed in the Adversary Proceeding on February 9, 2006, granting LANB's motion to reconsider the court's *sua sponte* decision to abstain from adjudicating the Adversary Proceeding; (3) whether the bankruptcy court erred in its order filed in the Adversary Proceeding on February 14, 2006, denying Mr. Friedlander's motion to reconsider its decision to not abstain from adjudicating the Adversary Proceeding; (4) whether the bankruptcy court erred in its order filed in the Adversary Proceeding on July 19, 2006, granting LANB's motion to determine whether the Adversary Proceeding was a core or non-core proceeding; (5) whether the bankruptcy court erred in its order filed in the Adversary Proceeding on August 9, 2006, granting summary judgment in favor of LANB, ordering RGTC to immediately disburse the escrowed funds in accordance with the Escrow Agreement, and denying summary judgment in favor of Mr. Friedlander; (6) whether the

---

[40]*See Clerk's Certificate of Service of Notice of Appeal (Doc. 1)*, at page numbered 3 in the Court's CM-ECF electronic docketing system.

[41]*See Martin S. Friedlander's Statement of Issues on Appeal (R., Vol. 1, Adv. Proc. Doc.107)* at 1-3; *"Appellant's "Amended" Opening Brief" (Doc. 24)* at 4-6.

[42]In his submissions in this appeal, Mr. Friedlander variously refers to the court being appealed from as "the Trial Court," "this bankruptcy court," "the Court" and "this Court;" however, from the context of these references it appears that all of these references are to the bankruptcy court in the Adversary Proceeding.  *See* *"Appellant's "Amended" Opening Brief" (Doc. 24)* at 4-6.

bankruptcy court erred by taking almost eight months to decide Mr. Friedlander's motion to reconsider the order referenced in issue "(5)," thereby violating Mr. Friedlander's rights to due process and equal protection under the Fourteenth Amendment; (7) whether the bankruptcy court erred by not dismissing the Adversary Proceeding due to a lack of subject matter jurisdiction; (8) whether the bankruptcy court erred by ordering RGTC to deliver the escrowed funds to LANB when RGTC was not a party to the Adversary Proceeding and the bankruptcy court lacked personal jurisdiction over RGTC; (9) whether the bankruptcy court erred by stating in its order filed in the Adversary Proceeding on April 13, 2007, that Mr. Friedlander should have appealed from the bankruptcy court's decision that the Adversary Proceeding was a core proceeding when that decision was contained in a non-appealable, interim order; (10) whether the bankruptcy court denied Mr. Friedlander his rights under the Fourteenth Amendment by holding that he should have appealed a non-appealable order; (11) whether the bankruptcy court denied Mr. Friedlander his rights under the Fourteenth Amendment by refusing to rule on his motion to dismiss the Adversary Proceeding for lack of subject matter jurisdiction;[43] and (12) whether the bankruptcy court denied Mr. Friedlander his rights under the privileges and immunities clause of the U.S. Constitution by treating him differently than a citizen of New Mexico.[44]

In his amended opening brief, Mr. Friedlander neglected to argue, or only minimally argued, several of the foregoing issues. Issues inadequately briefed in an opening brief on appeal are deemed waived. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998); *see also Coleman v.*

---

[43]This motion appears in the *Record* at *R., Vol. 2, Adv. Proc. Doc. 88.*

[44]The privileges and immunities clause provides: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const. art. IV, § 2, cl. 1.

*B-G Maintenance Management of Colo., Inc.,* 108 F.3d 1199, 1205 (10th Cir. 1997) ( "It is not sufficient to merely mention an issue in a reply brief. Issues not raised in the opening brief are deemed abandoned or waived."); *In re Barnes,* 307 B.R. 731 (Table), 2004 WL 102355, at *3 and n.7 (10th Cir. BAP Jan. 21, 2004) (unpublished and cited for its persuasive value) (argument mentioned in brief, but not explained or supported, was waived on appeal). Therefore, the Court has determined that it will not consider the issues listed in the foregoing paragraph as issues "(6)," "(7)," "(9)," "(10)," "(11)" and "(12)," and will deem those issues waived because Mr. Friedlander either failed to brief, or inadequately briefed, those issues in his amended opening brief in this appeal. For the same reasons, the Court will not consider, and will deem waived, certain other issues that were only briefly mentioned by Mr. Friedlander in his amended opening brief.[45]

Additionally, the Court will consider a threshold jurisdictional issue which it ordered the parties to address in supplemental briefs filed in this case.[46] The Court will also consider Mr. Friedlander's argument in his amended opening brief that the bankruptcy judge erred in denying Mr. Friedlander's motion to recuse the bankruptcy judge.

---

[45] These issues are whether schedules, a statement of affairs and claims of exemption filed for Mr. Potter in his bankruptcy proceeding were false; whether fraudulent transfers were made to the Trust; whether Mr. Potter filed an abusive and fraudulent bankruptcy; whether the U.S. Trustee violated the law by failing to notify the U.S. Attorney of crimes committed by an attorney for Mr. Potter; whether the differences between federal district judges and federal bankruptcy judges are constitutional and whether this issue should be certified to the United States Court of Appeals for the Tenth Circuit; whether Mr. Friedlander was wrongfully denied *pro hac vice* status; whether all sanction and contempt orders entered against Mr. Friedlander in the bankruptcy proceedings should be dismissed; whether Mr. Friedlander should be granted *pro hac vice* status to represent Mr. Potter, the Trust and all other parties who want to be represented by him; and whether the bankruptcy court erred in denying Mr. Friedlander's motion to reconsider its order granting LANB's cross-motion for summary judgment and denying Mr. Friedlander's motion for summary judgment. *See "Appellant's "Amended" Opening Brief"* (Doc. 24).

[46]*See **Order Staying Case for Supplemental Briefing*** (Doc. 28).

## Standard of Review

In reviewing a bankruptcy court decision, the district court reviews the bankruptcy court's legal determinations *de novo* and its factual findings under the "clearly erroneous" standard. *See In re Hodes*, 402 F.3d 1005, 1008 (10th Cir. 2005). A bankruptcy court's finding of fact is clearly erroneous "if it is without factual support in the record or if, after reviewing all of the evidence, we are left with the definite and firm conviction that a mistake has been made." *In re Peterson Distributing, Inc.*, 82 F.3d 956, 959 (10th Cir. 1996) (citation omitted).

Matters of discretion on appeal from the bankruptcy court are reviewed for abuse of discretion. "Under the abuse of discretion standard[,] 'a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'" *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir. 1994) (quoting *McEwen v. City of Norman*, 926 F.2d 1539, 1553-54 (10th Cir. 1991)) (additional citation omitted). "An abuse of discretion occurs when a judicial determination is arbitrary, capricious or whimsical. It is not merely an error of law or judgment, but an overriding of the law by the exercise of manifestly unreasonable judgment or the result of impartiality, prejudice, bias or ill-will as shown by evidence or the record of proceedings." *United States v. Wright*, 826 F.2d 938, 943 (10th Cir. 1987).

## Analysis

### A. Mr. Friedlander's Request for Judicial Notice

As an initial matter, the Court must consider Mr. Friedlander's request for judicial notice. In his amended opening brief, Mr. Friedlander asks the Court to take judicial notice of all items on the docket of Mr. Potter's bankruptcy case, all items appearing on the docket of the

13

Adversary Proceeding *after* this appeal was filed, all items on the docket of four other adversary proceedings, and records of the Corporations Bureau of the New Mexico Public Regulation Commission.[47]

Pursuant to Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts, including public documents filed in other court proceedings that are relevant to a case before the court. *See United States v. Ahidley*, 486 F.3d 1184, 1192 n. 5 (10th Cir. 2007) (noting "discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand"). However, in this case Mr. Friedlander asks the Court to take judicial notice of documents that, with the exception of any documents specifically referenced by the bankruptcy court in its rulings, were not before the bankruptcy court in the Adversary Proceeding when it made the decisions at issue in this appeal. Thus, Mr. Friedlander's request for judicial notice is, for the most part, an impermissible effort to expand the *Record* in this appeal to include documents that were not part of the record before the bankruptcy court. Items not before the bankruptcy court, and not considered by the bankruptcy court in making its decisions, may not be included in the record on appeal. *See In re CPDC, Inc.*, 337 F.3d 436, 443 (5th Cir. 2003) (record on appeal to the district court may not be supplemented with items that were not part of the record before the bankruptcy court). Accordingly, this attempt to expand the record on appeal by means of judicial notice should be denied, except to the extent that it pertains to any documents specifically referenced by the bankruptcy court in its rulings that are the subject of this appeal.

---

[47]*See "Appellant's "Amended" Opening Brief"* (*Doc. 24*) at pages numbered 11 and 12 in the Court's CM-ECF electronic docketing system.

## B. Appellate Jurisdiction

On March 4, 2008, the Court stayed this case and ordered supplemental briefing on the issues of whether this is an appeal from a final judgment, order or decree pursuant to 28 U.S.C. § 158(a); and, if not, whether the Court should grant Mr. Friedlander leave to appeal from an interlocutory order or decree pursuant to 28 U.S.C. § 158(a) and Fed. R. Bankr. P. 8003(c).[48] This briefing was ordered because it appeared from the *Record* that the bankruptcy court may not have ruled on Mr. Friedlander's counterclaims against LANB in the Adversary Proceeding.[49] Mr. Friedlander asserted counterclaims against LANB for fraud, breach of the implied covenant of good faith and fair dealing and prima facie tort.[50] As relief on his counterclaims, Mr. Friedlander sought, *inter alia*, compensatory damages and recision of LANB's loan documents that are at issue in this appeal.[51] Both parties filed supplemental briefs in response to the Court's order.[52]

---

[48]*See **Order Staying Case for Supplemental Briefing** (Doc. 28).*

[49] In its memorandum opinion ruling on Mr. Friedlander's motion for summary judgment and LANB's cross-motion for summary judgment, the bankruptcy court specifically noted that neither motion addressed Mr. Friedlander's counterclaims in the Adversary Proceeding. *See **Memorandum Opinion** (R., Vol. 3, Adv. Proc. Doc. 83)* at 2. Additionally, in his amended opening brief filed in this proceeding, Mr. Friedlander implied that the bankruptcy court had never ruled on his counterclaims. *See "Appellant's "Amended" Opening Brief" (Doc. 24)* at 17.

[50]*See **Martin S. Friedlander's Answer to Complaint and Counterclaim Against LANB, Reserving His Right to File a Motion for Judgment on the Pleadings in Lieu of a Motion to Dismiss After the Pleadings are Closed by This Answer, and Demands a Trial by Jury[]** (R., Vol. 4, as Adv. Proc. Doc . 38)* at 11-15. The Court notes that Volume 4 of the *Record* contains two copies of Mr. Friedlander's answer. One is an incomplete copy numbered *Document 37*, and the other is a complete copy numbered *Document 38*. The actual docket of the Adversary Proceeding shows that Mr. Friedlander's answer was filed and docketed as *Document 37*, and a separate docket entry was made as *Document 38* for the jury trial request contained in his answer. *See **Clerk's Certificate of Transmission of Record on Appeal and Index to Record on Appeal** (Doc. 4)* at page numbered 16 in the Court's CM-ECF electronic docketing system. Therefore, in this proposed analysis and recommended disposition, the Court will cite to Mr. Friedlander's answer as follows: "(R., Vol. 4, as Adv. Proc. Doc. 38)."

[51]*Id.* at 15-16.

[52]*See **Appellant's Supplemental Brief Pursuant to This Court's Order of 03/04/2008 in Support of His Contention That the Judgment Issued by the Trial Court on its Motion for Summary Judgment Was a Final Judgment Pursuant to 28 U.S.C. § 158 (a)** (Doc. 29); **Supplemental Brief of Appellee, Los Alamos National Bank** (Doc. 30).*

15

District courts have jurisdiction to hear appeals from final judgments, orders and decrees of a bankruptcy court. 28 U.S.C. § 158(a)(1). However, interlocutory orders and decrees are generally not appealable without leave of the district court. 28 U.S.C. § 158(a)(2) and (3). This Court raised the issue of subject matter jurisdiction *sua sponte* pursuant to its power to do so. *See, e.g., In re Terracor*, 86 B.R. 671, 677 (D. Utah 1988) ("Questions involving subject matter jurisdiction may be asserted by any party at any time or raised by a court sua sponte.").

In his supplemental brief on jurisdiction, Mr. Friedlander argues that the orders appealed from in this case are final and appealable because the bankruptcy court resolved Mr. Friedlander's counterclaims by denying his motion for reconsideration of the order granting LANB summary judgment, ordering RGTC to disburse the escrowed funds and denying Mr. Friedlander summary judgment.[53] In this motion for reconsideration, Mr. Friedlander argued that the bankruptcy court erred by ruling on the summary judgment motions without ruling on Mr. Friedlander's counterclaims. The bankruptcy court, in denying the motion for reconsideration, found that Mr. Friedlander had waived the right to assert his counterclaims because he failed to argue or address the counterclaims in his submissions on the summary judgment motions.[54] Additionally, the bankruptcy court found that Mr. Friedlander lacked standing to assert counterclaims which involved rights belonging to Mr. Potter and the Trust, rather than Mr. Friedlander.[55] In his supplemental brief on

---

[53]*See Appellant's Supplemental Brief Pursuant to This Court's Order of 03/04/2008 in Support of His Contention That the Judgment Issued by the Trial Court on Its Motion for Summary Judgment Was a Final Judgment Pursuant to 28 U.S.C. § 158 (a)* (Doc. 29) at page numbered 6 in the Court's CM-ECF electronic docketing system. The motion for reconsideration was ruled on by the bankruptcy court in its *Order Denying Motion to Reconsider* (R., Vol. 2, Adv. Proc. Doc. 102).

[54]*See Order Denying Motion to Reconsider* (R., Vol. 2, Adv. Proc. Doc. 102) at 6-7.

[55]*Id.*

16

jurisdiction, Mr. Friedlander also contends that the bankruptcy court's summary judgment rulings are final and appealable because they ended the merits of the Adversary Proceeding; were final as a practical matter; were collateral to the merits of the Adversary Proceeding; ordered the transfer of the escrowed funds to LANB; and decided the ownership of property.[56]

In its supplemental brief on jurisdiction, LANB contends that the orders appealed from in this case are final because the bankruptcy court disposed of the Adversary Proceeding by ruling on the motions for summary judgment and by ruling, in connection with Mr. Friedlander's motion for reconsideration, that he could not assert his counterclaims.[57]

The Court agrees with the parties that the orders appealed from in this case are final and appealable pursuant to 28 U.S.C. § 158(a)(1). A decision is final if it "'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)). The appropriate "judicial unit" for application of these requirements in bankruptcy "is not the overall case, but rather the particular adversary proceeding or discrete controversy pursued within the broader framework cast by the petition." *In re Durability, Inc.*, 893 F.2d 264, 266 (10th Cir. 1990). Here, in ruling on the motions for summary judgment, the bankruptcy court determined that LANB had a valid, priority lien on all of the funds held in escrow by RGTC, and that Mr. Friedlander did not have a lien on those funds. The bankruptcy court ordered the immediate release of all of the escrowed funds to LANB. Moreover, in ruling on

---

[56]*See Appellant's Supplemental Brief Pursuant to This Court's Order of 03/04/2008 in Support of His Contention That the Judgment Issued by the Trial Court on Its Motion for Summary Judgment Was a Final Judgment Pursuant to 28 U.S.C. § 158 (a)* (Doc. 29) at page numbered 7 in the Court's CM-ECF electronic docketing system.

[57]*See Supplemental Brief of Appellee, Los Alamos National Bank* (Doc. 30) at 4.

Mr. Friedlander's motion for reconsideration, the bankruptcy court determined that Mr. Friedlander had waived the right to assert his counterclaims and that he had no standing to assert counterclaims on behalf of Mr. Potter and the Trust.  This Court finds that these rulings by the bankruptcy court disposed of the claims in the Adversary Proceeding between LANB and Mr. Friedlander, making the orders entered in the Adversary Proceeding appealable as final orders pursuant to 28 U.S.C. § 158(a)(1). *Cf. In re Baines*, 528 F.3d 806, 810 (10th Cir. 2008) (holding that bankruptcy court's ruling on cross-motions for summary judgment was non-final and interlocutory because it failed to resolve all of the claims between the parties to an adversary proceeding).[58]

## C. Merits of the Appeal

### 1. Mr. Friedlander's Motion to Dismiss and/or to Transfer Venue

Mr. Friedlander contends that the bankruptcy erred by denying his motion to dismiss and/or transfer venue in an order filed on January 18, 2006.[59]  In this motion, Mr. Friedlander asserted that the bankruptcy court lacked personal jurisdiction over him in the Adversary Proceeding; New Mexico was not a proper venue for the Adversary Proceeding; and the Adversary Proceeding should be transferred to the United States Bankruptcy Court for the Central District of California which was an appropriate venue.[60]  In denying the motion, the bankruptcy court concluded that it had personal

---

[58]With the exception of Mr. Friedlander and LANB, no other party to the Adversary Proceeding asserted a claim to the escrowed funds in connection with Mr. Friedlander's and LANB's motions for summary judgment. Moreover, any claims that might have been asserted to the escrowed funds by Adversary Proceeding Defendants Kitty Miller, French & French Fine Properties and Summit Investment Company, were disposed of by the bankruptcy court's decision to grant LANB's motion for default judgment against those Defendants. *See Order Resolving Los Alamos National Bank's Motion for Default Judgment* (R., Vol. 4, Adv. Proc. Doc. 41) at 2.

[59]*See Order Denying Motion to Dismiss and/or to Transfer Venue and Abstaining From Adjudication of Adversary Proceeding* (R., Vol. 5, Adv. Proc. Doc. 22).

[60]*See Martin S[.] Friedlander, Esq.'s Motion to Dismiss Under FRCP Rule 12 B (2), and (3), for Lack of Jurisdiction Over the Person, and for Improper Venue, and [A]lso Under 28 USC Sections 1409, 1410, and 1412 and/or to Transfer to the United States Bankruptcy Court for the Central District of California Where*

jurisdiction over Mr. Friedlander; New Mexico was a proper venue for the Adversary Proceeding; and Mr. Friedlander had failed to show by a preponderance of the evidence that the Adversary Proceeding should be transferred to the Central District of California.[61] The bankruptcy court also concluded, acting *sua sponte*, that it should abstain from adjudicating the Adversary Proceeding, and stay the Adversary Proceeding, based on its findings that the Adversary Proceeding involved the same parties and claims as a pending New Mexico state court action as to which the bankruptcy court lifted the automatic stay.[62]

In this appeal, Mr. Friedlander argues that the bankruptcy court erred in denying his motion to dismiss and/or transfer venue by ignoring his arguments.[63] The Court disagrees and finds that the bankruptcy court properly determined that Mr. Friedlander's motion should be denied.

In his motion to dismiss and/or transfer venue, Mr. Friedlander argued that the bankruptcy court lacked personal jurisdiction over him in the Adversary Proceeding because he was not a resident of New Mexico. In support of this argument, he cited cases establishing the minimum contacts test for personal jurisdiction that is applied by the federal courts in diversity cases.[64] The

---

*Martin S[.] Friedlander, Esq. [R]esides and [P]ractices [L]aw, and [W]here the [A]ction [C]ould [H]ave [C]ommenced* (*R., Vol. 5, Adv. Proc Doc. 6*) at 1-2.

[61] *See Order Denying Motion to Dismiss and/or to Transfer Venue and Abstaining From Adjudication of Adversary Proceeding* (*R., Vol. 5, Adv. Proc. Doc. 22*) at 3-7.

[62] *Id.* at 7-8.

[63] *See "Appellant's "Amended" Opening Brief"* (*Doc. 24*) at pages numbered 29-30 in the Court's CM-ECF electronic docketing system.

[64] *See Martin S[.] Friedlander, Esq.'s Motion to Dismiss Under FRCP Rule 12 B (2), and (3), for Lack of Jurisdiction Over the Person, and for Improper Venue, and [A]lso Under 28 USC Sections 1409, 1410, and 1412 and/or to Transfer to the United States Bankruptcy Court for the Central District of California Where Martin S[.] Friedlander, Esq. [R]esides and [P]ractices [L]aw, and [W]here the [A]ction [C]ould [H]ave [C]ommenced* (*R., Vol. 5, Adv. Proc Doc. 6*) at 5-6.

bankruptcy court correctly pointed out that the Adversary Proceeding invoked federal question jurisdiction under Title 11 of the United States Code and, therefore, it was governed by the federal minimum contacts test for analyzing personal jurisdiction. *See In re Geauga Trenching Corp.*, 110 B.R. 638, 648 (Bankr. E.D. N.Y.1990) ("The presence of a Federal Question requires that we apply a Federal minimum contact test rather than a State minimum contact test. Title 11 provides us with the Federal question.") (internal quotation marks and citation omitted); *see also Cytomedix v. Little Rock Foot*, 287 B.R. 901, 903 (N.D. Ill. 2002) (holding that minimum contacts test established in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) does not apply in the bankruptcy context). The bankruptcy court correctly held that the federal minimum contacts test is satisfied by the proper service of a defendant who resides in the United States under Fed. R. Bankr. P. 7004 and, therefore, the bankruptcy court had personal jurisdiction over Mr. Friedlander who resided in the United States and did not dispute that he had been properly served under Rule 7004.[65]   *See In re Geauga Trenching Corp.*, 110 B.R. at 649 (holding that court had personal jurisdiction over defendant in federal question matter once it was shown that defendant had been properly served under Fed. R. Bankr. P. 7004 and resided in the United States).

In his motion to dismiss and/or transfer venue, Mr. Friedlander argued, citing 28 U.S.C. §§ 1404 and 1406, that New Mexico was not a proper venue for the Adversary Proceeding and that venue should be transferred to the Bankruptcy Court for the Central District of California, where he resided and practiced law, because it was both a proper and a more convenient venue. He also argued that the Adversary Proceeding should be transferred to California pursuant to 28 U.S.C. § 1412, in the interest of justice and for the convenience of the parties, and that a forum

---

[65]Fed. R. Bankr. P. 7004(d) authorizes nationwide service of process of a summons and complaint.

selection clause in a Trust instrument mandated a transfer of the Adversary Proceeding to California.

The bankruptcy court correctly held that Mr. Potter's bankruptcy proceeding was appropriately commenced in the District of New Mexico pursuant to 28 U.S.C. 1408, since it was undisputed that Mr. Potter resided in New Mexico, and had his principal place of business and his principal assets there during the 180-day period prior to the bankruptcy filing.[66]  The bankruptcy court also correctly held that New Mexico was the proper venue for the Adversary Proceeding pursuant to 28 U.S.C. § 1409(a), which provides that "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending."

The bankruptcy court's analysis of Mr. Friedlander's argument under 28 U.S.C. § 1412 was also correct.  This statute provides that "a case or proceeding under title 11" may be transferred to "another district, in the interest of justice or for the convenience of the parties."  As the movant, Mr. Friedlander had the burden of proving that the transfer would be in the interest of justice or for the convenience of the parties.  *In re Wheeler*,  69 B.R. 29, 31 (Bankr. D.N.M. 1986).  The bankruptcy court considered appropriate factors in its analysis of this issue,[67] and concluded that

---

[66]28 U.S.C. §1408 states, in relevant part, that:

> [A] case under title 11 may be commenced in the district court for the district . . . in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement . . . .

[67]These factors were: "1) the relative ease of access to the sources of proof; 2) the availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining the attendance of willing witnesses; 3) the enforceability of a judgment if obtained; 4) the applicability of a particular state law and the local interest in applying that law through courts within the state; 5) the responsibilities and difficulties of court administration; 6) the relative advantages and obstacles to fair trial; and 7) other practical matters which encourage the efficient and inexpensive trial of the case."  *Order Denying Motion to Dismiss and/or to Transfer Venue and Abstaining From Adjudication of Adversary Proceeding (R., Vol. 5, Adv. Proc. Doc.  22)* at 5.  These factors were applied to decide the same issue in

Mr. Friedlander had failed to show by a preponderance of the evidence that a transfer was warranted. The bankruptcy court found that although the inconvenience and expense of attending trial in New Mexico were arguably burdensome on Mr. Friedlander, this was counterbalanced by the burden that would be placed on LANB if the Adversary Proceeding were transferred to California. The decision to transfer or retain a case under 28 U.S.C. § 1412 is a matter of discretion. *See In re Hechinger Investment Co. of Delaware, Inc.*, 288 B.R. 398, 402 (Bankr. D. Del. 2003) ("Ultimately, the decision to transfer or retain a case lies within the sound discretion of the Court."). This Court finds no abuse of discretion in the bankruptcy court's determination of this matter. *See Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992) ("Merely shifting the inconvenience from one side to the other . . . is not a permissible justification for a change of venue.") (citation omitted).

Finally, the bankruptcy court correctly rejected Mr. Friedlander's argument based on the forum selection clause in the Trust instrument because LANB was not a party to that instrument and, therefore, not bound by its provisions. *See Cameron v. Group Voyagers, Inc.*, 308 F. Supp.2d 1232, 1237 (D. Colo. 2004) (holding forum selection clause unenforceable against individuals who did not bargain for, or expressly agree to be bound by, its provisions).

## 2.  **Abstention**

As described above, in its order denying Mr. Friedlander's motion to dismiss and/or transfer venue, the bankruptcy court determined, *sua sponte*, to abstain from adjudicating the Adversary Proceeding, after approving a settlement between Mr. Potter and LANB to lift the

---

*In re Wheeler*, 69 B.R. at 31, citing *In re Cole Associates, Inc.*, 7 B.R. 154, 156 (Bankr. D. Utah 1980).

automatic stay to allow the continued adjudication of a state court action.[68]  The bankruptcy court based its decision to abstain on findings that the Adversary Proceeding was just beginning; that it involved the same parties and the same claims under state law as the pending state court action; and that it would affect the administration of the bankruptcy estate only if there were any funds available after the state court adjudicated the rights of LANB, the Trust and Mr. Friedlander to the escrowed funds.[69]  LANB filed a motion for reconsideration of this decision, which the bankruptcy court granted, reversing its decision to abstain based on findings that the state court action did not seek to resolve precisely the same issue as the Adversary Proceeding and that several of the defendants in the Adversary Proceeding who might assert a claim to the escrowed funds were not parties to the state court action.[70]  Mr. Friedlander filed a motion asking the bankruptcy court, *inter alia*, to reconsider its decision not to abstain from hearing the Adversary Proceeding, which the bankruptcy court denied.[71]

In this appeal, Mr. Friedlander contends that the bankruptcy court erred by granting LANB's motion to reconsider the court's *sua sponte* decision to abstain and denying Mr. Friedlander's motion to reconsider that decision.[72]  In his amended opening brief, he argues that "these issues have been

---

[68]*See Order Denying Motion to Dismiss and/or to Transfer Venue and Abstaining from Adjudication of Adversary Proceeding* (R., Vol. 5, Adv. Proc. Doc. 22) at 7-8.

[69]*Id.*

[70]*See Los Alamos National Bank's Motion for Reconsideration of Order Abstaining From Adjudicating This Adversary* (R., Vol. 5, Adv. Proc. Doc. 23); *Order Granting Plaintiff's Motion for Reconsideration* (R., Vol. 5, Adv. Proc. Doc. 28) at 1-2.

[71]*See Martin S[.] Friedlander's Motion for Reconsideration* (R., Vol. 5, Adv. Proc. Doc. 29); *Order Denying Martin Friedlander's Motion for Reconsideration* (R., Vol. 4, Adv. Proc. Doc. 32).

[72]*See "Appellant's "Amended" Opening Brief"* (Doc. 24) at page numbered 30 in the Court's CM-ECF electronic docketing system.

fully brief[ed]" in the section of the brief related to his motion to dismiss and/or transfer venue;[73] however, the Court finds no arguments on abstention in that section of the brief.  The only other references approaching argument on the subject of abstention in Mr. Friedlander's briefs are a conclusory statement in his amended opening brief that the bankruptcy court's reasons for its initial decision to abstain "were valid ones," and another that the bankruptcy court "committed error in its reasoning," apparently with reference to its decision to grant LANB's motion to reconsider the court's abstention decision.[74]  Mr. Friedlander cites no legal authorities in his briefs on the subject of abstention.

"[M]ere conclusory allegations with no citations to the record or any legal authority for support" do not constitute adequate briefing.  *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005).  Under this standard, Mr. Friedlander failed to adequately brief the subject of abstention.  However, "[w]here an appellant has provided defective briefs, the court in its discretion may scrutinize the merits of the case insofar as the record permits . . . ." *Fryar v. Curtis*, 485 F.3d 179, at 182 n. 1 (1st Cir. 2007) (internal quotation marks and alterations omitted).

Here, the bankruptcy court's decisions to abstain, and then refrain from abstaining, were made pursuant to 28 U.S.C. § 1334(c)(1) which governs voluntary abstention.  The version of Section 1334(c)(1) applicable to the Adversary Proceeding stated:

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State court or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

---

[73] *Id.*

[74] *Id.* at page numbered 21 in the Court's CM-ECF electronic docketing system.

24

28 U.S.C. § 1334(c)(1) (1994). The abstention decisions by the bankruptcy court at issue in this appeal were discretionary. *See In the Matter of Chicago, Milwaukee, St. Paul & Pacific Railroad Co.*, 6 F.3d 1184, 1188-89 (7th Cir. 1993) (court's decision to abstain under 28 U.S.C. § 1334(c)(1) is reviewed "for an abuse of discretion[,]" bearing in mind "that federal courts generally should exercise their jurisdiction if properly conferred and that abstention is the exception rather than the rule.") Mr. Friedlander has pointed to nothing in the *Record*, and cited no legal authorities, that support his argument that the bankruptcy court abused its discretion in deciding not to abstain from deciding the Adversary Proceeding. Moreover, no abuse of discretion is apparent from the *Record*. Accordingly, the Court finds no abuse of discretion in the bankruptcy court's decisions to grant LANB's motion to reconsider the decision to abstain and to deny Mr. Friedlander's motion to reconsider that decision.

### 3. LANB's Motion for Determination of Whether the Adversary Proceeding Was a Core or Non-Core Proceeding

Mr. Friedlander contends that the bankruptcy court erred in holding that the Adversary Proceeding was within its core jurisdiction pursuant to 28 U.S.C. § 157(b). The bankruptcy court made this ruling in its order granting LANB's motion for a determination of whether the Adversary Proceeding was a core or non-core proceeding.[75] Mr. Friedlander's arguments on this point are difficult to follow, but he appears to argue, by reference to other sections of his amended opening brief and to provisions of his answer filed in the Adversary Proceeding, that the funds held in escrow by RGTC were not part of Mr. Potter's bankruptcy estate because the Trust

---

[75] *See Order on Motion for Determination of Whether Proceeding is Core or Non-Core* (*R., Vol. 3, Adv. Proc. Doc. 78*).

held title to the Galisteo Property from which those funds derived.[76]  Mr. Friedlander also argues that

the bankruptcy judge was biased and prejudiced against him and that this affected the judge's ruling

on the motion;[77] however, the Court finds this argument, with regard to the bankruptcy court's core

jurisdiction ruling, to be too conclusory and unsupported in Mr. Friedlander's briefs to be

considered.  *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d at 841 (conclusory allegations

without citations to the record or supporting legal authority do not constitute adequate briefing).

Under 28 U.S.C. § 157(b)(1), a bankruptcy judge may hear and determine core proceedings.[78]

In the ruling challenged here, the bankruptcy court held that the Adversary Proceeding was a core

proceeding on three separate grounds listed in 28 U.S.C. § 157(b)(2).[79]  In doing so, it specifically

rejected Mr. Friedlander's argument that the bankruptcy court did not have core jurisdiction because

the escrowed funds were not part of Mr. Potter's bankruptcy estate.  The bankruptcy court held that

Mr. Potter had a beneficial interest in the Galisteo Property when the property was sold, and that this

---

[76]*See "Appellant's "Amended: Opening Brief"* (*Doc. 24*) at pages numbered 29-30 in the Court's CM-ECF electronic docketing system; *Martin S. Friedlander's Answer to Complaint and Counterclaim Against LANB, Reserving His Right to File a Motion for Judgment on the Pleadings in Lieu of a Motion to Dismiss After the Pleadings are Closed by This Answer, and Demands a Trial by Jury[]* (*R., Vol. 4, as Adv. Proc. Doc. 38*) at ¶ 4.

[77]*See "Appellant's "Amended: Opening Brief"* (*Doc. 24*) at pages numbered 30-31 in the Court's CM-ECF electronic docketing system

[78]The version of Section 157(b)(1) applicable to the Adversary Proceeding stated:

> Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, . . . and may enter appropriate orders and judgments, subject to review under section 158 of this title.

28 U.S.C. § 157(b)(1) (1994).

[79]*See Order on Motion for Determination of Whether Proceeding is Core or Non-Core* (*R., Vol. 3, Adv. Proc. Doc. 78*) at 3-6.  28 U.S.C. § 157(b)(2)(A) through (O) (1994) listed matters that were core proceedings, although the list was not exclusive.  The grounds relied on by the bankruptcy court were listed in § 157(b)(2)(A), (K) and (O).

beneficial interest continued in the proceeds of the sale which included the escrowed funds.[80]  The bankruptcy court held that Mr. Potter's beneficial interest in the escrowed funds made those funds property of his bankruptcy estate and, therefore, the Adversary Proceeding involving claims to the escrowed funds was within the bankruptcy court's core jurisdiction.[81]

The Court finds no error in the bankruptcy court's ruling.  In the Adversary Proceeding, it was undisputed that the funds held in escrow by RGTC were proceeds from the sale of the Galisteo Property; that prior to the sale of the Galisteo Property, Mr. Potter transferred his interest in the Galisteo Property to the Trust; and that Mr. Potter retained a beneficial interest in the Galisteo Property after the transfer to the Trust which continued in the escrowed proceeds of the sale.[82] Mr. Potter's beneficial interest in the escrowed funds when he filed his bankruptcy case made the funds property of his bankruptcy estate.  *See* 11 U.S.C. § 541(a)(1) (except as otherwise provided, bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case"); *Matter of Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993) (Section 541 broadly construed to include all legal and equitable interests of the debtor in property

---

[80]*See Order on Motion for Determination of Whether Proceeding is Core or Non-Core* (*R., Vol. 3, Adv. Proc. Doc. 78*) at 4.

[81]*Id.*

[82]Mr. Friedlander admitted in his answer to the complaint in the Adversary Proceeding that Mr. Potter had a beneficial interest in the escrowed funds.  *See Martin S. Friedlander's Answer to Complaint and Counterclaim Against LANB, Reserving His Right to File a Motion for Judgment on the Pleadings in Lieu of a Motion to Dismiss After the Pleadings are Closed by This Answer, and Demands a Trial by Jury[]* (*R., Vol. 4, as Adv. Proc. Doc. 38*) at ¶ 15. Moreover, the Escrow Agreement, which was executed by the trustee of the Trust and by Mr. Friedlander, as the trustee's attorney, acknowledged Mr. Potter's interest in the escrowed funds, stating that the escrowed funds were to be "put into escrow for Jeffrey W. Potter."  *Los Alamos National Bank's Response in Opposition to Martin S. Friedlander's Motion for Judgment on the Pleadings and/or for Summary Judgment Against LANB and Cross-Motion for Summary Judgment* (*R., Vol. 3, Adv. Proc. Doc. 70*), Exhibit 7 (Escrow Agreement) (*S.R., Adv. Proc. Doc. 70-7*) at ¶ A.7.

as of the commencement of a bankruptcy case).[83] The fact that the sale proceeds were held in escrow did not alter their status as property of the bankruptcy estate. *See, e.g., Gravel and Shea v. Vermont National Bank*, 162 B.R. 961, 968 (D. Vt. 1993) (bankruptcy court had core jurisdiction over proceeds of sale of debtor's property held in escrow, subject to competing lien claims). Thus, the bankruptcy court correctly concluded that the escrowed funds were property of Mr. Potter's bankruptcy estate.

The bankruptcy court also correctly concluded that it had core jurisdiction over the Adversary Proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (K) and (O).  The Adversary Proceeding concerned the administration of Mr. Potter's bankruptcy estate, making it a core proceeding pursuant to § 157(b)(2)(A) ("matters concerning the administration of the estate" are core proceedings).  Additionally, the Adversary Proceeding was an action by LANB to determine the validity, extent and priority of its asserted lien against the escrowed funds, making the action a core proceeding under § 157(b)(2)(K) (proceedings to determine "the validity, extent, or priority of liens" are core proceedings).  Finally, the Adversary Proceeding involved the adjustment of Mr. Potter's liability for the claims of LANB and Mr. Friedlander, making it a core proceeding pursuant to § 157(b)(2)(O) (core proceedings include "proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship . . . .").  *See also In re Commonwealth Institutional Securities*, 344 B.R. 827, 828 (Bankr. W.D. Ky. 2006) (adversary proceeding to determine validity, priority and extent of attorney's lien on property of bankruptcy estate was core proceeding which bankruptcy court had jurisdiction to decide under 28 U.S.C. § 157(b)(2)(A) and (K)).

---

[83]The Court notes that in this appeal Mr. Friedlander has not argued, and has not briefed, the issue of whether Mr. Potter's interest in the escrowed funds met the requirements for exclusion from his bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2) and applicable nonbankruptcy law.

### 4. Mr. Friedlander's Motion for Summary Judgment and
### LANB's Cross-Motion for Summary Judgment

Mr. Friedlander contends that the bankruptcy court erred in its order filed on August 9, 2006, and its memorandum opinion of the same date, granting summary judgment in favor of LANB, ordering RGTC to immediately disburse the escrowed funds in accordance with the Escrow Agreement, and denying summary judgment in favor of Mr. Friedlander.[84]   In its memorandum opinion, the bankruptcy court denied Mr. Friedlander's motion for judgment on the pleadings and/or for summary judgment, which it treated as a motion for summary judgment, and granted LANB's cross-motion for summary judgment.  The bankruptcy court's disposition of the summary judgment motions required that it decide the following issues: whether Mr. Friedlander had a valid attorney's lien on the escrowed funds; whether LANB had a valid lien on the escrowed funds pursuant to Article 9 of the Uniform Commercial Code; and which of the liens, if any, had priority and entitled the lienholder to disbursement of the escrowed funds pursuant to the Escrow Agreement. The bankruptcy court held that Mr. Friedlander did not have an attorney's lien on the escrowed funds; that LANB had a valid, priority lien on the funds pursuant to Article 9; and that LANB was entitled to disbursement of the funds pursuant to the Escrow Agreement.  The bankruptcy court ordered the funds disbursed to LANB pursuant to the Escrow Agreement.

Mr. Friedlander's arguments with regard to the summary judgment motions are less than clear. In his amended opening brief, he appears to incorporate by reference the arguments contained in his motion for judgment on the pleadings and/or for summary judgment, at pages three through thirteen therein, and in his motion for reconsideration of the summary judgment rulings, without

---

[84]See *"Appellant's "Amended" Opening Brief"* (*Doc. 24*) at pages numbered 31-32 in the Court's CM-ECF electronic docketing system; *Appellant's Reply Brief* (*Doc. 27*) at pages numbered 4-13 in the Court's CM-ECF electronic docketing system.

restating those arguments.[85] Therefore, the Court construes his arguments in this appeal by reference to those documents. The crux of Mr. Friedlander's argument on appeal appears to be as follows: (1) he had a lien on the escrowed funds for unpaid attorney's fees incurred in connection with his legal representation of Mr. Potter and the Trust in several legal matters including the sale of the Galisteo Property; (2) his attorney's lien was a contractual lien based on two retainer agreements governing his legal work for Mr. Potter and the Trust; (3) in the alternative, his attorney's lien was an equitable lien for the reasonable value of his legal services in representing Mr. Potter and the Trust in connection with the sale of the Galisteo Property; and (4) his lien on the escrowed funds was superior to the lien of LANB. Additionally, Mr. Friedlander argues that the bankruptcy court erred in its consideration of LANB's loan workout agreement in which Mr. Friedlander contends LANB acknowledged that he had an attorney's lien on the escrowed funds superior to the lien of LANB; in failing to decide his counterclaims on the merits; and in denying his request for a hearing on the motions for summary judgment.

This Court reviews the bankruptcy court's order granting and denying the summary judgment motions applying the same legal standard used by the bankruptcy court. *See In re Stat-Tech Int'l. Corp.*, 47 F.3d 1054, 1057 (10th Cir. 1995). "Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.*

The undisputed facts in the *Record* show that on or about August 25, 2003, Potter created the Trust and transferred his undivided one-half interest in the Galisteo Property to the Trust.[86] The

---

[85] *See "Appellant's "Amended" Opening Brief"* (*Doc. 24*) at pages numbered 31-32 in the Court's CM-ECF electronic docketing system. Mr. Friedlander's motion for judgment on the pleadings and/or for summary judgment appears in the *Record* at *R., Vol. 4, Adv. Proc. Doc. 53.* Mr. Friedlander's motion for reconsideration appears in the *Record* at *R., Vol. 3, Adv. Proc. Doc. 85.*

[86] *See Complaint to Determine Validity, Priority or Extent of Liens and for Declaratory Judgment* (*R., Vol. 5, Adv. Proc. Doc. 1*) at ¶ 15; *Object[ion] to LANB's Motion "For Approval of Agreement Between Debtor and Los Alamos National Bank to Modify Automatic Stay* (*R., Vol. 6, Bankr. Case Doc. 48*), Exhibit F at second, ninth and tenth pages.

Galisteo Property was then sold, and the sellers were the Trust and Kitty Miller, each owning an undivided one-half interest in the property.[87] After certain deductions, one-half of the sale proceeds, denominated the "Potter Proceeds," were put in escrow with RGTC.[88]  The Escrow Agreement provided that after the payment of $15,000.00 to Mr. Friedlander for attorney's fees and the payment of $49,063.99 to the Internal Revenue Service to satisfy a federal tax lien against Mr. Potter, the remaining "Potter Proceeds" would equal approximately $76,336.05.[89]  In December of 2003, Mr. Potter restructured his existing debt to LANB and, in connection with this, executed a loan workout agreement, a promissory note in the amount of $82,200.00, and a security agreement in favor of LANB.[90]  In the security agreement, Mr. Potter granted LANB a lien on certain collateral, including the "Potter Proceeds" funds that were held in escrow.[91]  On December 19, 2003, LANB filed a UCC-1 financing statement with the New Mexico Secretary of State's Office to perfect its security interest in the escrowed funds.[92]

---

[87] *See Los Alamos National Bank's Response in Opposition to Martin S. Friedlander's Motion for Judgment on the Pleadings and/or for Summary Judgment Against LANB and Cross-Motion for Summary Judgment* (R., Vol. 3, Adv. Proc. Doc 70), Exhibits 7 (Escrow Agreement) (S.R., Adv. Proc. Doc. 70-7) and 8 (Escrow Instructions) (S.R., Adv. Proc. Doc. 70-8).

[88] *Id.*

[89] *See Los Alamos National Bank's Response in Opposition to Martin S. Friedlander's Motion for Judgment on the Pleadings and/or for Summary Judgment Against LANB and Cross-Motion for Summary Judgment* (R., Vol. 3, Adv. Proc. Doc 70), Exhibit 7 (Escrow Agreement) (S.R., Adv. Proc. Doc. 70-7) at ¶ B.

[90] *See Los Alamos National Bank's Response in Opposition to Martin S. Friedlander's Motion for Judgment on the Pleadings and/or for Summary Judgment Against LANB and Cross-Motion for Summary Judgment* (R., Vol. 3, Adv. Proc. Doc 70), Exhibits 3 (Loan Workout Agreement) (S.R., Adv. Proc. Doc. 70-2), 4 (Promissory Note and Truth-in-Lending Disclosures) (S.R., Adv. Proc. Doc. 70-3) and 5 (Security Agreement) (S.R., Adv. Proc. Doc. 70-4).

[91] *See Los Alamos National Bank's Response in Opposition to Martin S. Friedlander's Motion for Judgment on the Pleadings and/or for Summary Judgment Against LANB and Cross-Motion for Summary Judgment* (R., Vol. 3, Adv. Proc. Doc 70), Exhibit 5 (Security Agreement) (S.R., Adv. Proc. Doc. 70-4) at 2.

[92] *See Los Alamos National Bank's Response in Opposition to Martin S. Friedlander's Motion for Judgment on the Pleadings and/or for Summary Judgment Against LANB and Cross-Motion for Summary Judgment* (R., Vol. 3, Adv. Proc. Doc 70), Exhibit 6 (UCC Financing Statement) (S.R., Adv. Proc. Doc. 70-5).

The Escrow Agreement, which was entered into by LANB, French & French, Mr. Potter, the

Trust by its trustee, Summit Investment, Kitty Miller and RGTC, included the following provision

with regard to the "Potter Proceeds:"

> Any and all remaining proceeds (in the approximate amount of
> $76,336.05) shall be placed in escrow held for the benefit of all lien
> holders subject to the liens of Los Alamos National Bank pursuant to
> its mortgage as modified and French & French pursuant to the
> Transcript of Judgment with said liens attaching in the same priority
> and effect as the liens attach to the Property as of the date of closing.
> The escrowed monies shall be distributed in accordance with the
> following instructions:
> a. If the [French & French] judgment is reversed, with no money due
> to French & French, upon a final judicial opinion, Los Alamos
> National Bank receive the full amount of escrowed funds to satisfy
> any outstanding amounts due to Los Alamos National Bank with any
> remainder of funds to the Legal Defense and Maintenance Trust of
> California dated 8/25/03 (the "Trust")[.][93]

Mr. Friedlander signed the Escrow Agreement as attorney for the trustee of the Trust, Mr. Potter and

Summit Investment.[94]   Mr. Friedlander does not dispute that the referenced French & French

judgment was reversed and that French & French released its related judgment lien.[95]

Mr. Friedlander asserted a contractual attorney's lien on the escrowed funds pursuant to two

retainer agreements.  The first agreement, dated August 13, 2003, was between Mr. Friedlander and

Mr. Potter (hereinafter, the "Potter Retainer Agreement").[96]  The second agreement, dated October 4,

---

[93] *See Los Alamos National Bank's Response in Opposition to Martin S. Friedlander's Motion for Judgment on the Pleadings and/or for Summary Judgment Against LANB and Cross-Motion for Summary Judgment* (*R., Vol. 3, Adv. Proc. Doc 70*), Exhibit 7 (Escrow Agreement) (*S.R., Adv. Proc. Doc. 70-7*) at ¶¶ B.4. and B.4.a.

[94] *Id.* at 4.

[95] *See Martin S. Friedlander's Answer to Complaint and Counterclaim Against LANB, Reserving His Right to File a Motion for Judgment on the Pleadings in Lieu of a Motion to Dismiss After the Pleadings are Closed by This Answer, and Demands a Trial by Jury[]* (*R., Vol. 4, as Adv. Proc. Doc. 38*) at ¶ 18.

[96] *See* Mr. Friedlander's *Proof of Claim* (*R., Vol. 6, Bankr. Case Doc. 15*), Exhibit A (Attorney-Client Retainer Agreement) (*S.R.*).

2003, was between Mr. Friedlander and the trustee of the Trust (hereinafter, the "Trust Retainer Agreement").[97]

The Potter Retainer Agreement provided that it was governed by California law.[98] In ruling on the summary judgment motions, the bankruptcy court correctly noted, quoting *Carroll v. Interstate Brands Corp.*, 99 Cal.App.4th 1168, 1172 (2002), that in California, unlike most other jurisdictions, an attorney's lien does not arise by operation of law, but is, as the California court stated in *Carroll*, "created only by contract - either by an express provision in the attorney fee contract[,] or by implication where the retainer agreement provides that the attorney is to look to the judgment for payment for legal services rendered." (citations omitted).[99]  *See also In re Bouzas*, 294 B.R. 318, 321-22 (Bankr. N.D. Cal. 2003) ("California law governing attorney's charging liens . . . is not seriously in dispute.  Under California law, the only way an attorney may acquire an attorney's charging lien is by contract.  No California statute creates such a lien nor do California courts recognize a common law or equitable lien.").

In the Potter Retainer Agreement, Mr. Friedlander agreed to represent Mr. Potter in connection with an attorney malpractice claim and agreed to "perform all things deemed by [Mr. Friedlander] to be reasonably necessary, appropriate or desireable for the purpose of collecting all damages" in connection with such claim.[100]  With regard to Mr. Friedlander's compensation, the Potter Retainer Agreement granted him an attorney's lien in a provision which stated that

---

[97]*See* Mr. Friedlander's ***Proof of Claim*** (*R., Vol. 6, Bankr. Case Doc. 15*), Exhibit B (Attorney-Client Retainer Agreement) (*S.R.*).

[98]*See* Mr. Friedlander's ***Proof of Claim*** (*R., Vol. 6, Bankr. Case Doc. 15*), Exhibit A (Attorney-Client Retainer Agreement) (*S.R*) at 4.

[99]*See **Memorandum Opinion*** (*R., Vol. 3, Adv. Proc. Doc. 83*) at 6.

[100]*See* Mr. Friedlander's ***Proof of Claim*** (*R., Vol. 6, Bankr. Case Doc. 15*), Exhibit A (Attorney-Client Retainer Agreement) (*S.R.*) at 1.

Mr. Friedlander "shall be directly paid out of all funds collected from [the attorney who allegedly committed malpractice] or his malpractice carrier and shall have a 'lien' on all settlement proceeds until paid in full."[101]  This Court concurs with the bankruptcy court that the latter provision of the Potter Retainer Agreement limited Mr. Friedlander's contractual attorney's lien to any funds that were collected from the legal malpractice matter and did not extend to the escrowed funds from the sale of the Galisteo Property which were not proceeds of the malpractice matter.  Therefore, this Court finds no error in the bankruptcy court's decision, based on undisputed facts in the record and applicable law, that Mr. Friedlander had no contractual attorney's lien on the escrowed funds pursuant to the Potter Retainer Agreement.

Mr. Friedlander also relied on the Trust Retainer Agreement for his contractual lien claim against the escrowed funds.  In the Trust Retainer Agreement, Mr. Friedlander agreed to represent a defined "Client" in connection with "all pending civil litigation" against the client except a pending legal malpractice case and pending appellate litigation regarding the French & French judgment.[102]  The term "Client" was defined in the agreement to mean, collectively, Mr. Potter, Summit Investment and Summit Valdes Business Park LLC.[103]  The Trust Retainer Agreement provided that Mr. Friedlander was retained on a contingent fee basis to represent the "Client" where there was "a positive recovery upon which attorney fees may be assessed[,]" and on an hourly basis for all litigation matters that were defensive in nature.[104]  The Trust Retainer Agreement granted

---

[101] *Id.* at 3.

[102] *See* Mr. Friedlander's ***Proof of Claim*** (*R., Vol. 6, Bankr. Case Doc. 15*), Exhibit B (Attorney-Client Retainer Agreement) (*S.R.*) at 1.

[103] *Id.*

[104] *Id.* at 2.

Mr. Friedlander an attorney's lien in the following provision: "Attorneys shall be directly paid out of all funds collected, and shall have a 'lien' on all settlement proceeds and judgments until paid in full."[105]   This Court agrees with the bankruptcy court that the foregoing provision of the Trust Retainer Agreement only granted Mr. Friedlander a lien on the collected proceeds of the litigation that was the subject of the Trust Retainer Agreement, either by settlement or judgment, and it did not grant him a lien on the escrowed funds from the sale of the Galisteo Property which were not such proceeds.   Thus, the bankruptcy court did not err in concluding, based on undisputed facts in the record, that Mr. Friedlander had no contractual attorney's lien on the escrowed funds pursuant to the Trust Retainer Agreement.

In support of his equitable lien claim, Mr. Friedlander argued to the bankruptcy court that he was discharged by the withdrawal of his local counsel from representing his clients in the legal malpractice matter and in certain litigation involving funds held by a receiver that was referenced in the Trust Retainer Agreement.   Therefore, he argued, under California law he was entitled to an equitable lien on the funds held in escrow by RGTC in the amount of his attorney's fees prior to his discharge.   The bankruptcy court correctly applied California law to this issue and found that under California law an attorney's otherwise enforceable contractual lien survives the discharge of the attorney and allows recovery of fees based on *quantum meruit*.   *See Carroll v. Interstate Brands Corp.*, 99 Cal. App. 4th at 1172, n. 3 ("If a lien is created by contract, the lien survives the discharge of the attorney, and the attorney, although no longer entitled to the fees contracted for, remains entitled to recover from the judgment the reasonable value of services actually performed.").   However, this right to recovery presupposes a lien created by contract. Here, as the bankruptcy court

---

[105] *Id.* at 4.

correctly held, Mr. Friedlander did not have a contractual attorney's lien on the escrowed funds pursuant to the Potter Retainer Agreement or the Trust Retainer Agreement. Consequently, he had no attorney's lien to continue on those funds after his discharge from the malpractice matter and the litigation involving the funds held by the receiver.

Mr. Friedlander's other arguments related to the summary judgment motions are also without merit. LANB's loan workout agreement did not grant Mr. Friedlander an attorney's lien on the escrowed funds or agree that he held an attorney's lien on those funds. Rather, as the Bankruptcy Court recognized, the relevant language of the loan workout agreement acknowledged the superiority of an attorney's lien, if any, held by Mr. Friedlander on the various collateral for LANB's loan.[106]

Nor did the bankruptcy court err in failing to decide Mr. Friedlander's counterclaims on the merits. As the bankruptcy court noted in its memorandum opinion on the summary judgment motions, neither party's motion for summary judgment addressed Mr. Friedlander's counterclaims.[107] Thus, it was not incumbent on the bankruptcy court to consider the merits of the counterclaims in disposing of the motions for summary judgment.

Finally, the bankruptcy court did not err in refusing Mr. Friedlander's request for a hearing on the motions for summary judgment.[108] Consideration of a motion for summary judgment does not require an evidentiary hearing and a bankruptcy court may decide a motion for summary judgment on the briefs. *City of Kansas City, Kansas v. Taylor*, 213 B.R. 21, 23 (D. Kan. 1997). The

---

[106]*See Los Alamos National Bank's Response in Opposition to Martin S. Friedlander's Motion for Judgment on the Pleadings and/or for Summary Judgment Against LANB and Cross-Motion for Summary Judgment* (R., Vol. 3, Adv. Proc. Doc. 70), Exhibit 3 (Loan Workout Agreement) (S.R) at ¶¶ 1.B. and 2.A.

[107]*See Memorandum Opinion* (R., Vol. 3, Adv. Proc. Doc. 83) at 2.

[108]Mr. Friedlander requested a hearing on the motions for summary judgment in *Friedlander's Request for Hearing on the Following Matters* (R., Vol. 3, Adv. Proc. Doc. 76).

*Record* shows that Mr. Friedlander had a full opportunity to present legal argument and evidence in his briefs and other submissions on the motions for summary judgment in the Adversary Proceeding.

Based on the foregoing, the Court concludes that LANB had a valid and perfected lien on the funds held in escrow by RGTC pursuant to LANB's loan workout agreement, promissory note, security agreement and UCC-1 financing statement, and Mr. Friedlander did not have an attorney's lien on the escrowed funds. Pursuant to the Escrow Agreement, LANB was entitled to disbursement of the escrowed funds when the French & French judgment was reversed and its related judgment lien released.

### 5.  Order to Disburse Escrowed Funds

Mr. Friedlander argues that the bankruptcy court erred by ordering RGTC to deliver the escrowed funds to LANB. According to Mr. Friedlander, this was error because RGTC was not a party to the Adversary Proceeding and, therefore, the bankruptcy court lacked personal jurisdiction over RGTC. This direction by the bankruptcy court, contained in its order granting summary judgment in favor of LANB and denying summary judgment in favor of Mr. Friedlander, ordered RGTC "to immediately disburse certain escrowed monies in accordance with the Escrow Agreement dated November 30, 2003[,] executed by LANB, French & French Fine Properties, Inc., Jeffrey W. Potter, Legal Defense and Maintenance Trust of California Dated 8/25/03, Summit Investment Company, LLC, Kitty Miller and Rio Grande Title Company."[109]  Mr. Friedlander also appears to argue that this order to RGTC was an improper injunction because RGTC was not a party to the Adversary Proceeding.

---

[109] *Order Granting LANB Summary Judgment and Denying Martin S. Friedlander Summary Judgment* (R., Vol. 3, Adv. Proc Doc. 84).

With regard to Mr. Friedlander's argument that the bankruptcy court lacked personal jurisdiction over RGTC, the Court finds that Mr. Friedlander has no standing to assert this argument. To satisfy the requirements of prudential standing, a party "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). The requirement of personal jurisdiction is intended to protect a party's liberty interest, representing an individual right that may be waived. *See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702-03 (1982). Mr. Friedlander cites no legal authority for holding that he has standing to assert the personal defense of lack of personal jurisdiction on behalf of non-party RGTC.

Without citing to any legal authority, Mr. Friedlander argues that the bankruptcy court's order to RGTC to disburse the escrowed funds in accordance with the Escrow Agreement was an improper injunction because RGTC was not a named party to the Adversary Proceeding.[110] It is undisputed that RGTC was a party to the Escrow Agreement, in which it contractually agreed to act as the other parties' escrow agent with regard to their instructions concerning the escrowed funds.[111] Thus, RGTC was LANB's agent with regard to the escrowed funds, as well as the agent of the other parties to the Escrow Agreement who were French & French, Mr. Potter, the Trust, Summit Investment and Ms. Miller. Rule 65 of the Federal Rules of Civil Procedure applies in adversary proceedings. *See* Fed. R. Bankr. P. 7065. The version of Fed. R. Civ. P. 65(d) in effect when the bankruptcy court ordered RGTC to disburse the escrowed funds to LANB provided that: "Every order granting an

---

[110]*See "Appellant's "Amended" Opening Brief" (Doc. 24)* at pages numbered 19-20 in the Court's CM-ECF electronic docketing system.

[111]*See Los Alamos National Bank's Response in Opposition to Martin S. Friedlander's Motion for Judgment on the Pleadings and/or for Summary Judgment Against LANB and Cross-Motion for Summary Judgment (R., Vol. 3, Adv. Proc. Doc. 70)*, Exhibit 7 (Escrow Agreement) *(S.R., Adv. Proc. Doc. 70-7)* at 1-2 and ¶ B.4.

injunction . . . is binding only upon the parties to the action, their officers, *agents*, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." Fed. R. Civ. P. 65(d) (2001) (emphasis added). Thus, the order to RGTC to disburse the escrowed funds to LANB was binding on RGTC, as the agent of LANB, upon actual notice of the order, by personal service or other means, and it made no difference that RGTC was not a named party to the Adversary Proceeding.

The order was also consistent with the terms and conditions of the Escrow Agreement which provided that if a judgment in favor of French & French was reversed, with no money due to French & French, then "upon a final judicial opinion, Los Alamos National Bank receive the full amount of escrowed funds to satisfy any outstanding amounts due to Los Alamos National Bank with any remainder of funds to the Legal Defense and Maintenance Trust of California dated 8/25/03 . . . ."[112]  As noted above, Mr. Friedlander does not dispute that the judgment in favor of French & French was reversed and that French & French released its related judgment lien which applied to the escrowed funds.[113]

### 6. Mr. Friedlander's Motion to Recuse the Bankruptcy Judge

Although citing the wrong document numbers in his brief, Mr. Friedlander appears to challenge the bankruptcy court's ruling on Mr. Friedlander's motion to recuse the bankruptcy judge.[114]  The motion was denied.[115]

---

[112]*Id.* at ¶ B.4.a.

[113]*See Martin S. Friedlander's Answer to Complaint and Counterclaim Against LANB, Reserving His Right to File a Motion for Judgment on the Pleadings in Lieu of a Motion to Dismiss After the Pleadings are Closed by This Answer, and Demands a Trial by Jury[]* (R., Vol. 4, as Adv. Proc. Doc. 38) at ¶ 18.

[114]*See "Appellant's "Amended" Opening Brief"* (Doc. 24) at 7-10.

[115]*See Martin S. Friedlander's Request for Recusal of Judge* (R., Vol. 5, Adv. Proc. Doc. 26); *Order Denying Martin S. Friedlander's Request of Recusal of Judge* (R., Vol. 4, Adv. Proc. Doc . 31).

In a status conference held in Mr. Potter's bankruptcy proceeding, Judge McFeeley disclosed that his former law clerk, Katherine Cook Fishman, was the daughter of Richard Cook, who was a creditor in the bankruptcy proceeding and a party in another adversary proceeding.[116] It is undisputed that neither Mr. Cook nor Ms. Fishman was a party to the Adversary Proceeding or had any interest in, or made a claim to, the escrowed funds.  In his motion for recusal, Mr. Friedlander asked Judge McFeeley to recuse himself from the Adversary Proceeding, due to Ms. Fishman's relationship to Richard Cook.  In this appeal, Mr. Friedlander does not argue that Judge McFeeley was biased against him.[117]  Instead, he contends that his recusal motion should have been granted because Judge McFeeley's impartiality could reasonably be questioned as a result of Ms. Fishman's relationship to Mr. Cook.

Mr. Friedlander's argument is governed by 28 U.S.C. § 455(a).[118] This statute provides that:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

A decision to recuse is discretionary and is reviewed for an abuse of discretion.  *See Hinman v. Rogers*, 831 F.2d 937, 938 (10th Cir. 1987).  Recusal is warranted under § 455(a) if "a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality." *Id.* at 939.  "There is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is." *Id.*

---

[116]*See **Order Denying Martin S. Friedlander's Request of Recusal of Judge*** (*R., Vol. 4, Adv. Proc. Doc. 31*) at 1.

[117]*See **"Appellant's "Amended" Opening Brief"*** (*Doc. 24*) at page numbered 15 in the Court's CM-ECF electronic docketing system ("The issue is not whether the lower court was in fact biased against appellant or Potter, but whether a 'reasonable person standing in the shoes of the decider' would have decided in favor of recusal.").

[118]28 U.S.C. § 144, cited by Mr. Friedlander, applies only to district judges - not to bankruptcy judges. *See In re Goodwin*, 194 B.R. 214, 221 (9th Cir. BAP 1996); *In re Williams*, 99 B.R. 70, 71 n.1 (Bankr. D.N.M. 1989); Fed. R. Bankr. P. 5004(a).

40

The Court finds no error in Judge McFeeley's ruling on the motion to recuse. Judge McFeeley's relationship to Mr. Cook through Ms. Fishman was too attenuated to create a reasonable doubt about his impartiality in the Adversary Proceeding. Ms. Fishman was not a party to the Adversary Proceeding or to Mr. Potter's bankruptcy proceeding and she did not represent a party as counsel in those proceedings. Mr. Cook was not a party to the Adversary Proceeding involved here and he made no claim to the escrowed funds. It is not reasonable to assume that Judge McFeeley would be willing to set aside his oath to be impartial in order to please the father of his former law clerk, who was not a party to the Adversary Proceeding and claimed no interest in the escrowed funds. "A judge should not recuse himself on unsupported, irrational, or highly tenuous speculation." *Hinman v. Rogers*, 831 F.2d at 939.

### Recommended Disposition

For the reasons set forth above, the Court is not persuaded that the bankruptcy court erred in its rulings on the matters that are the subject of this appeal. Accordingly, the Court recommends that the bankruptcy court's grant of summary judgment to LANB, denial of summary judgment to Mr. Friedlander, its order to RGTC to disburse the escrowed funds to LANB, and its other rulings challenged in this appeal be **AFFIRMED**.

**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**

41